(No. 37444.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES CONNOLLY, Plaintiff in Error.

*Opinion filed September 28, 1965.*

J. M. KOSSACK, of Chicago, (STUART B. SCUDDER, of counsel,) for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and LESTER A. BONAGURO, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Defendant, Charles Connolly, and seven others were charged with the murder of Ocie Pickens who was robbed and stabbed to death on the front steps of his home in Chicago. After denial of defendant's motions for a separate trial, for suppression of confessions, and for a directed verdict, he was found guilty by a jury and sentenced to a term of twenty-five years in the penitentiary.

Defendant now urges the reversal of his conviction on the grounds (1) that the trial court erred in denying his motion for severance; (2) that it was error to deny his motion to suppress his admissions and confessions since the

circumstances under which these statements were elicited rendered them involuntary; (3) that the trial court erred in overruling his motion for a directed verdict in that the evidence did not establish his complicity in the murder; (4) that certain portions of his confession should not have been deleted before being read to the jury; and (5) that a new trial must be granted because an instruction tendered by defendant and refused was lost and is not in the record on appeal.

The facts are not in dispute. On November 20, 1959, the deceased was walking down a sidewalk near his home when a group of about ten youths crossed the street and followed him up the stairs of his home. The gang crowded around the victim, grabbed him and threw him down. Defendant and another boy searched him, and defendant took a wallet from his pocket. One of the other boys stabbed Pickens with a knife causing his death.

Two days later, on November 22, 1959, defendant, who was fourteen years of age, was arrested at about 10:00 A.M. at his home in the presence of his step-father. At that time, defendant admitted he knew why the police were there, and also stated that he knew the boys who were involved in the killing of Ocie Pickens. Defendant was taken immediately to the youth section of a police station where he was questioned in the presence of a number of other youths who allegedly participated in the attack. Also present during the questioning were the parents of the other boys. Defendant orally admitted his participation in the robbery of the deceased, and at about noon gave a written statement to the same effect. The only statements of the defendant which were introduced against him were those given during the two-hour period between 10:00 A.M. and noon on November 22, 1959.

We shall first consider defendant's contention that the trial court erred in denying his motion for severance. It appears that the basis for defendant's motion was the fact

that the State's Attorney intended to introduce against him certain statements of a co-defendant, Ervin Daniels, which were made out of the presence of defendant Connolly and which implicated Connolly. In response to the motion, the State's Attorney agreed to delete from Daniels's statement all references to Connolly. Such deletions were made, and the statements were read to the jury in that form. The official court reporter, in preparing the court proceedings, inadvertently omitted these deletions, but on motion, the report of proceedings was corrected pursuant to the trial court's order.

"The general rule is that persons jointly indicted for the commission of a crime should be tried together and whether a separate trial should be granted is largely within the sound judicial discretion of the trial court. The paramount inquiry is whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial." (*People* v. *Wilson*, 29 Ill.2d 82, 91.) No contention has been made in this case that co-defendants Daniels and Connolly had antagonistic defenses, nor is there any showing that the denial of a severance would work any prejudice to the defendant Connolly. Proper deletions from Daniels's statement appear to have been made before they were read to the jury, and under these circumstances we conclude that the trial court did not err in denying defendant's motion for severance.

Defendant next contends that the trial court erred in denying his motion to suppress certain admissions and confessions made by him. In support of this contention, defendant relies on the fact of his youthful age and argues that the fact that he "was a juvenile and should have been turned over to family court authorities prior to interrogation renders [a] confession inadmissible in criminal court proceedings". He also contends that even though he was not beaten by the police, he was nevertheless put in fear of such mistreatment when his co-defendant, Daniels, told him that he

had been beaten. He further argues that "where a confession of one defendant is involuntary, subsequent confessions which are products of the first should be suppressed, whether or not the subsequent confessions are by the same defendant."

We have been referred to no provision in the Family Court Act (Ill. Rev. Stat. 1963, chap. 23, par. 2001 *et seq.*) which supports defendant's contention that the failure to take him immediately to family court authorities prior to interrogation rendered his subsequent statements inadmissible in the criminal court proceedings. That act merely provides that statements made to the family court or its officers may not be used against a juvenile in another court or proceeding. (Ill. Rev. Stat. 1963, chap. 23, par. 2001.) The act does not make juveniles immune from proper police investigation, nor does it render inadmissible voluntary statements to law enforcement officers.

In *People* v. *Thomlison,* 400 Ill. 555, we held that a confession unlawfully obtained renders one made subsequently by the same defendant, while under the same constraint, also inadmissible. Never has this been extended to hold, as contended by defendant, that a confession obtained from one defendant may also render subsequent confessions of other defendants inadmissible. The voluntariness of a confession in each case must be determined by an examination of the surrounding facts and circumstances.

The record in this case does not reveal circumstances which render defendant's confessions inadmissible. There was no lengthy interrogation. Defendant made some incriminating statements in the presence of his step-father almost immediately after he was arrested at his home. At the police station, the questioning of defendant was conducted in the presence of parents of the other boys and lasted no more than an hour. Certain persons involved in the arrest and questioning of defendant Connolly and defendant Daniels testified that neither Daniels nor Connolly had been

mistreated in any way. Furthermore, defendant does not contend that he ever requested the advice or assistance of an attorney. The youthful age of the defendant is a factor to be considered in determining the voluntariness of his confession (*People* v. *Price,* 24 Ill.2d 46), but on the facts of this case, we think that the trial court did not err in determining that defendant's confessions were voluntary and therefore admissible.

Defendant next contends that the evidence did not establish that he actively participated in the fatal stabbing of Pickens. However, the evidence clearly established that defendant was one member of a gang whose design was to rob the victim. That the boys did not intend to bring about the death of their victim does not relieve them of the killing committed in the course of the robbery. (*People* v. *Kolep,* 29 Ill.2d 116; *People* v. *Cole,* 30 Ill.2d 375.) "In contemplation of law, whatever any one of them did in furtherance of the original design, is the act of all, and all are equally quilty of whatever crime was committed." *People* v. *Rudecki,* 309 Ill. 125, 129.

Defendant also contends that certain exculpatory parts of his statement were deleted before being read to the jury and that these deletions were highly prejudicial to his defense. We find no indication in the record that defendant objected to these deletions. Furthermore, it appears that the deleted portions refer to other co-defendants by name and contain statements by defendant as to what he said and did after the victim was stabbed. We have carefully examined the deleted portions of defendant's statement and do not agree with defendant that these omitted portions tended to relieve him of any complicity in the killing of Ocie Pickens.

Defendant's final contention is that a new trial should be granted because an instruction tendered by him and refused by the trial court was lost and does not appear in the record on appeal. He argues that the loss of the refused instruction was the fault of a State agency, that it is the duty

of the court to supply a record complete in its essentials, and that the failure to do so constitutes prejudicial and reversible error. The only reference in the record as to the whereabouts of the instruction was the court reporter's notation that "after a search of the court's file and an inquiry of both the State's Attorney and the public Defender, the court reporter is unable to locate the referred to 'refused' instruction". There is no showing as to why the refused instruction was not included in the record or that its omission was the fault of any State agency. Essentially, it is the responsibility of the defendant to have the transcript corrected to show what instruction of his was refused. This was not done. Defendant is apparently unaware of the content of the instruction he tendered, and we are therefore in no position to determine whether the trial court erred in refusing to give it. We must presume that no error was committed by the trial court in this respect.

We find no reversible error, and the conviction must be affirmed.

*Judgment affirmed.*