**People of the State of Illinois, Plaintiff-Appellee, v. John T. Thomas, Jr. (Impleaded), Defendant-Appellant.**

Gen. No. 54,040.

First District, Fourth Division.

June 26, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Mary Cahill, Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael Goldstein, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

OFFENSE CHARGED

Murder. Ill Rev Stats 1967, c 38, § 9–1(a)(3).*

JUDGMENT

After a jury trial, John Thomas (hereinafter defendant) was found guilty of felony murder and sentenced to a term of 20 to 40 years. Coindictee Samuel Robinson had pleaded guilty, and codefendant Jeffery Sykes was found not guilty.

CONTENTIONS RAISED ON APPEAL

1. The evidence is insufficient to establish that the act which caused the victim's death occurred while defendant was attempting or committing a forcible felony.

2. The jury was incompletely instructed as to the elements of the crime charged in the indictment.

3. Because defendant exercised his constitutional right to be tried by a jury, he was penalized by the imposition of a harsher sentence than he would have received had he pleaded guilty.

EVIDENCE

Joseph Podsiadlik, for the State:

On October 15, 1967, he was in Jack and Gloria's Tavern at 8701 South Marquette Avenue. He had arrived at 8:00 p. m. and talked and watched television along with another patron, Joe Sloma. At approximately 8:40

---

* This section of the Criminal Code provides:

(a) A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:

(1) He either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or

(2) He knows that such acts create a strong probability of death or great bodily harm to that individual or another; or

(3) He is attempting or committing a forcible felony other than voluntary manslaughter.

p. m., a fellow walked into the tavern and proceeded to the back of the room. The witness thought he was going to the washroom. Then another fellow, identified as defendant, entered and stood near the door. He then heard a bang, looked around, and saw John Benson slumped to the floor. The bang came from the back of the tavern and he heard the first fellow (Robinson) say to defendant, who was still standing at the door, "I got him." Both men then left, walking fast.

Joseph Sloma, for the State:

He was sitting at the bar in Gloria and Jack's Tavern when two fellows came in. One (Robinson) stood next to the witness facing the bartender, John Benson. Robinson took a gun out of his pocket and shot Benson. The witness did not know where the other man was at that time. The entire incident took between fifteen and twenty seconds. The two men then left the tavern and he ran out to see if there were any cars. He saw the men heading for a car parked in an alley some forty feet east of the intersection where the tavern is located. They got into the car, one in the front and one in the back, and sped off down the alley. There were empty parking places in front of the tavern.

Louis Walker, for the State:

He is a police officer and on October 15, 1967, at approximately 8:40 p. m., was patrolling in the vicinity of 87th Street and Stony Island in a squad car. Upon receiving two radio communications, he stopped an automobile at 75th and South Chicago Avenue. There were three people in the car: Sykes, who was driving; defendant, who was in the front seat on the passenger side; and Robinson, who was in the back seat. He recovered, from defendant's rear pocket, a revolver containing two live shells and one spent shell. Another gun was recovered under the front seat of the automobile. It was stipulated that the bullet taken from the body of deceased had been fired by this gun.

136

Paul Mazzocco, for the State:

On the evening in question, he was sitting on his back porch at 8645 South Marquette watching television. The porch faces an alley. At approximately 8:40 p. m., he noticed an automobile pull into the alley and turn its lights off. About two minutes later he noticed two men who ran down the alley and jumped into the car. With its lights off, the automobile immediately sped away.

Mary Dumas, for the State:

She is the manager of Boyce and Dumas Food and Liquor Store which is located at 8926 Stony Island (about a mile and a half from Jack and Gloria's Tavern). On October 15, 1967, at approximately 8:15 p. m., two men (whom she identified as defendant and Robinson) entered the store. Robinson asked for a half pint of liquor and some cigarettes. She told him that he would have to go into the liquor section of the store to get them. Robinson then took out a gun just as a young boy walked into the store. Robinson said to the boy, "Hey you! Come here." The witness ran into the liquor part of the store and started yelling and screaming. When she returned, both men had left.

Neither man said, "I am going to rob you" or "Give me your money," and Robinson did not point the gun at the witness.

Jeffery Sykes, sole witness for the defense:

Defendant, who was a lifelong friend, and Robinson had been living in his apartment for three weeks prior to October 15, 1967. On that day, the three of them went out for a drink at approximately 7:00 p. m. The witness was driving defendant's automobile. They stopped at a package store at 75th and Ingleside, and Robinson bought a pint of wine. After a stop at a tavern, defendant said he wanted to take some beer back to the apartment, so they stopped at a lounge, possibly a combination grocery and liquor store, near 87th Street and Stony Island Avenue. Defendant and Robinson got out and, when

137

they returned to the car, there was no more than the usual conversation. Defendant asked the witness to stop again at 87th and Marquette because he wanted to get some beer. There were no parking spaces on the street, so he pulled into an alley and stopped. Robinson and defendant got out and he turned the lights off in the automobile. The two came running back and jumped into the car. Defendant said, "Sam has shot a man." Witness, up to this point, had not seen a gun, nor had there been any talk of weapons, but he now noticed a .22 revolver in Robinson's hand. He drove away down the alley, and was stopped by police officers at 76th and South Chicago while waiting at a traffic light.

OPINION

The indictment contained three counts charging murder under the three parts of the statute defining that crime. The first count alleged intentional murder, the second charged murder in the performance of an act known to create a strong probability of death or great bodily harm, and the third charged what has come to be known as "felony murder," in that the killing occurred while defendant was attempting to commit the forcible felony, robbery. Ill Rev Stats 1967, c 38, § 9–1(a)(1), (2), (3). At the close of the State's case, defense counsel moved to dismiss the indictment, and the trial judge sustained the motion as to counts one and two. That ruling is not subject to review. Defendant was convicted on the only remaining charge of felony murder.

Defendant initially contends that while the evidence clearly established the killing, it is insufficient to establish that it occurred while defendant, as either principal or accomplice, was attempting to commit robbery. It is conceded that if the evidence established that Robinson and defendant were attempting to commit a robbery and the victim's death resulted from that attempt,

138

it would be immaterial whether Robinson or defendant fired the shot which caused the death, or whether the killing was intentional or accidental. People v. Danner, 105 Ill App2d 126, 130, 245 NE2d 106; People v. Connolly, 33 Ill2d 128, 210 NE2d 523. It is uncontradicted that defendant entered the tavern with Robinson and that Robinson fired the shot that resulted in the victim's death. The evidence also demonstrates that both men had entered a nearby store a few minutes before the shooting where Robinson had displayed a weapon. In neither instance, however, was there any evidence of an attempt to commit robbery. No intention to commit robbery was orally communicated to either alleged victim by either defendant or Robinson, nor was any money or property either demanded or taken. The proof showed that Robinson simply walked up to the bar, pointed the gun at the bartender without saying anything, and shot him dead. The only words spoken in the tavern came immediately after the shooting, when Robinson said, "I got him."

The State urges that it met its burden of proving that defendant was performing an act which constituted a substantial step toward the commission of a robbery. (See the statutory definition of the crime of attempt, Ill Rev Stats 1967, c 38, § 8–4a.) It advances the theory that Robinson intended to rob the bartender; that defendant stationed himself at the door as a lookout; and that they then fled when Robinson lost his self-control and shot the victim. Further evidence of this intention to rob, they urge, is demonstrated by the prior episode in the grocery-liquor store where Robinson had displayed his gun (also without any accompanying demand).

The State relies on People v. Turner, 108 Ill App2d 132, 246 NE2d 817, where we said, at page 138: "Proof of specific intent to rob is necessary, but competent circumstantial evidence may establish the requisite intent."

139

Under the circumstances of Turner, the direction to the taxi driver to stop at a place other than the previously announced destination, the production of a gun, and the statement, "This is it," were considered sufficient evidence of an intent to commit robbery. We believe that those facts are significantly different from those in the instant case.

 It can be speculated, or even considered probable, that Robinson—and defendant as his accomplice— intended to rob Mr. Benson, but we cannot say that the evidence established this fact beyond a reasonable doubt. As has been mentioned, there was no declaration of a robbery, and there was no demand for money or goods, nor was there any attempt to remove money or property from the tavern. The State's apparent attempt to show a pattern of robbery through the testimony about the food and liquor store failed for the same reasons. Defendant's flight from the tavern adds nothing as an indicator of attempted robbery. Under the sole remaining felony murder count of the indictment, proof of a forcible felony—attempted robbery, in this case— is essential to a conviction. Therefore, since the State has failed utterly in the necessary quantum of proof as to the underlying crime, defendant's conviction must be reversed.

In view of this decision, defendant's other contentions need not be considered.

The judgment of the Circuit Court is reversed.

Reversed.

DRUCKER and LEIGHTON, JJ., concur.